IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENJAMIN WAYNE MERRING, PRO PER and RUHAMAH CLARA MERRING, his wife,<br>     Plaintiffs<br><br>v.<br><br>THE CITY OF CARBONDALE, PENNSYLVANIA; JEFF TAYLOR, individually and an his official capacity as Chief of Police, Carbondale Police Department; BRIAN BOGNATZ, individually and in his official capacity as Sergeant Carbondale Police Department; DOMINICK ANDIDORA, individually and in his official capacity as Officer of the Carbondale Police Department; THE COMMONWEALTH OF PENNSYLVANIA; PAUL CAVISTON, individually and in his official capacity as Constable, Commonwealth of Pennsylvania; and NORMAN LOHREY, individually and in his official capacity as Constable, Commonwealth of Pennsylvania,<br>     Defendants | No. 3:06cv895<br><br>(Judge Munley) |

## **MEMORANDUM**

  Before the court for disposition are the defendants' motions for summary judgment. The matter has been fully brief and is ripe for disposition.

**Background**

  Plaintiffs assert that on July 6, 2005 at approximately 7 p.m., two Carbondale police officers, Defendants Brian Bognatz and Domnick Andidora, and two Pennsylvania Constables, Defendant Paul Caviston and John Doe, met in front of plaintiffs' home at 104 Park Street, Carbondale,

1

Pennsylvania. (Doc. 22, Amended Complaint, ¶ 17). Defendant Caviston had an bench warrant to execute on Plaintiff Benjamin Wayne Merring, and he had solicited the aid of the police officers in order to arrest the plaintiff. (Id. at ¶¶ 14-15).

Plaintiffs aver that they were both home at the time and sleeping in an upstairs bedroom. (Id. at ¶ 20). The two police officers and the John Doe Constable came to the front door of plaintiff's residence. (Id. at ¶ 19). They opened the front screen door. They then knocked and opened the front door. They entered plaintiffs' home. (Id. at 21). The three men stayed in the home for several minutes then returned outside to speak with Defendant Caviston. (Id. at ¶¶ 25-26).[1] After speaking with Caviston, the two police officers and the constable re-entered the house. (Id. at ¶ 27). Defendant Bognatz took the stairs to the second floor and "banged" on the bedroom door where the plaintiffs were. (Id. at 28). Bognatz opened the bedroom door, and the plaintiffs awoke, aware for the first time that the officers had entered their home. (Id. at 29). Plaintiff Benjamin Wayne Merring spoke to the officer and said, "What are you doing in my house? You can't come in my house. Who the hell do you think you are?" (Id. at 31). Plaintiff Benjamin Wayne Merring began shouting repeatedly, "Get out of my house!" (Id. at 32).

Eventually Plaintiff Benjamin Wayne Merring said to Defendant Bognatz, "I'm getting a gun." (Id. at 35). Then the three men left the home. (Id. at 36). The defendants did not leave the area of plaintiff's

---

[1]The amended complaint contains two paragraphs number 25 and none numbered 26. When we refer to paragraph 26 we refer to the second paragraph numbered 25.

2

home, however.  They set up a "swat like setting" surrounding the home. (Id. at 37-38).  At 10:15, the plaintiffs discovered that the police had left. (Id. at 45-46).

Plaintiffs assert that the Carbondale News reported the incident in a factually inaccurate manner due to false statements provided by the defendants.  (Id. at 50).

Based upon these incidents, the plaintiffs file a *pro se* complaint on April 28, 2006.  (Doc 1).   Plaintiff filed an amended complaint on January 9, 2007 after obtaining leave of court. (Doc. 22).  The amended complaint filed pursuant to 42 U.S.C. § 1983 and § 1985, is comprised of twelve counts.  The first six counts are for "Degradation of Civil Rights." Count VII and VIII assert "failure to train" claims against the City of Carbondale and the Commonwealth of Pennsylvania respectively.  Count IX is a state law claim for intentional infliction of emotional distress.  Count X is a state law claim for invasion of privacy.  The amended complaint includes two counts labeled "Count XI."   The first asserts a state law cause of action for false imprisonment, and the second is a state law claim for libel.

At the close of discovery, the defendants moved for summary judgment bringing the case to its present posture.

**Jurisdiction**

As this case is brought in part pursuant to 42 U.S.C. § 1983 and § 1985 for constitutional violations, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

A motion for summary judgment was filed by the City of Carbondale, Jeff Taylor, Brian Bognatz and Dominick Andidora (hereinafter collectively the "Carbondale Defendants").  Also, a motion for summary judgment was filed by Defendants Paul Cavitson and Norman Lohrey (hereinafter "Constable Defendants").  We will address the two motions separately.

**I.  The Carbondale Defendants' Motion**

The Carbondale Defendants motion for summary judgment discusses the following seven issues: 1) the constitutional claims; 2) supervisor liability/failure to train; 3) Monell claim; 4) conspiracy; 5) qualified immunity; 6) intentional infliction of emotional distress; and 7) governmental immunity. We will address these issues *in seriatim*.

### A.  Constitutional Claims

The Carbondale Defendants argue that plaintiffs do not allege a valid constitutional claim against them.  Plaintiffs claim that the defendants actions violated their Fourth Amendment rights to be free from unreasonable search and seizures as made applicable to the states through the Fourteenth Amendment.  According to the Carbondale Defendants entry upon the premises is constitutionally permissible without a search warrant where officers are acting on an arrest warrant founded on probable cause and they enter a dwelling in which the suspect lives when there is reason to believe that the suspect is within.  We agree, but summary judgment will nonetheless be denied on this issue.

The United States Supreme Court has explained that "for Fourth Amendment purposes, an arrest warrant founded on probable cause

implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980).  Plaintiffs argue that this law is applicable to felonies, but is not applicable to their case, because the crime charged is a misdemeanor.  We are not convinced.  The case law makes no distinction between a misdemeanor offense and a felony offense in this instance.  Courts that have addressed this issue have held that the principle of warrantless entry applies equally to misdemeanor warrants as felony warrants.  See United States v. Spencer, 684 F.2d 220, 222-24 (2d Cir. 1982); Shreve v. Jessamine County Fiscal Court, 453 F.3d 681, 689 (6th Cir. 2006); United States v. Clayton, 210 F.3d 841, 843 (8th Cir. 2000) *cited with approval in* United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005).

Thus, if the defendants were acting on a valid warrant, there is a two-part analysis to determine if entry into the plaintiffs' residence was valid.  We must determine if the officers had a reasonable belief that the arrestee 1) lived in the residence; and 2) was present within the residence when they entered.  United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006).

In the instant case, it is uncontested that plaintiffs' resided at the home that the defendants entered.  We must, therefore, focus on the second factor of whether the defendants had a reasonable belief that the subject of the bench warrant was present when they entered.   The Carbondale Defendant's indicate that they acted upon information from an informant who believed that Plaintiff Benjamin Wayne Merring was home. (Doc. 30-3, Carbondale Defendant's Statement of Facts at ¶ 10).  In

6

support of this position, the Carbondale Defendants cite paragraph 21 of the plaintiff's complaint, which in fact does not support this contention. Paragraph 21 provides: "One Police officer Brian Bognatz followed by the second police officer Dominick Andidora and one constable (John Doe) opened the front screen door then knocked and opened the front door and entered the plaintiffs home." (Doc. 22, Plaintiff Amended Complaint ¶ 21). Additionally, plaintiffs object to defendants' "statement of fact" made by the plaintiff and indicates that they have asked for the name, address of this alleged witness and had not been provided with this information. (Doc. 37, Plaintiff's Objection/Response to Defendants' Statement of Fact, ¶ 10).

As the Carbondale Defendants have not provided evidence that they had a reasonable belief that the arrestee was present within the residence that they entered, summary judgment on this ground is inappropriate.

### B. Supervisor liability/failure to train

Counts III of plaintiffs' amended complaint asserts that Defendant Jeff Taylor, the Carbondale Chief of Police, failed to adequately train and supervise the Carbondale police. Defendant Taylor moves for summary judgment on this claim. The motion shall be granted.

Defendant Taylor cannot be held liable for the civil rights violations of those he supervises merely because of his supervisory position. Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988). He can be held liable if plaintiffs allege that he personally directed the unlawful conduct alleged or had actual knowledge of and consented to that conduct, and such allegations must be made with the necessary particularity. Id. at 1207.

Absent direct involvement, a plaintiff can hold a supervisor liable for failure to train or supervise if the supervisor has exhibited deliberate

7

indifference to the plight of the person deprived.  <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 357 (3d Cir. 1999).  To hold a supervisor liable for deliberate indifference, the plaintiff must establish that:  (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.  <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989).

In the instant case, the plaintiffs have not established direct involvement of Defendant Taylor.   Plaintiffs have further failed to present any evidence regarding that factors that must be established to find deliberate indifference.  Summary judgment will thus be granted in favor of Defendant Taylor.

**C.  Monell**

Similar to their claim against Defendant Taylor, the plaintiffs assert that the Defendant City of Carbondale failed to properly train and supervise its police officers.  (Doc. 22, Amended Complaint ¶¶ 63-64).  Next, the Carbondale Defendants challenge this claim.  After a careful review, summary judgment will be granted to Defendant City of Carbondale.

To establish a civil rights violation by a municipality, a plaintiff must demonstrate that the alleged misconduct was caused by an official government custom or policy. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). The Third Circuit Court of Appeals has describe <u>Monell</u> liability as follows:

> Thus, there are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. Under <u>Monell</u>, a plaintiff shows that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy,

> or edict." Bielevicz [v. Dubinon], 915 F.2d [854]at 850 [(3d Cir. 1990)] (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986))). A plaintiff may establish a custom, on the other hand, "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (citing Andrews, 895 F.2d at 1480). In other words, custom may be established by proving knowledge of, and acquiescence to, a practice. Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.1989).

Watson v. Abington Twp., 478 F.3d 144, 155-56 (3d Cir. 2007).

In the instant case, the plaintiffs have presented no evidence of a policy or custom that would lead to liability of the City of Carbondale. Judgment will therefore be granted to the city.

### D.  Conspiracy

Counts IV and V of plaintiffs' complaint assert a conspiracy amongst the defendants to violate their civil rights. (Doc. 22, Amended Complaint, ¶¶ 57-60). The Carbondale Defendants assert that summary judgment in their favor is appropriate on the conspiracy claim. We agree.

Conspiracies for the deprivation of civil rights are governed by 42 U.S.C. § 1985. Section 1985 is applicable, however, only where the conspiracy is motivated by a racial or otherwise class-based, invidiously discriminatory animus. Griffin v. Breckenridge, 403 U.S. 88, 91 (1971). In the instant case, plaintiffs have presented no evidence of –and indeed have not even alleged – membership in a class that is protected by the civil rights conspiracy statute. Summary judgment will be granted to the defendants on the civil rights conspiracy claim.

### E.  Qualified immunity

Next, the Carbondale Defendants assert that the individual

defendants are entitled to qualified immunity for the alleged constitutional violations. This portion of the motion will be denied.

Qualified immunity can serve as a defense to an individual defendant accused of a civil rights violation. <u>See</u>, <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991). Qualified immunity does not apply where state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Wright v. City of Philadelphia</u>, 409 F.3d 595, 699-600 (3d Cir. 2005) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). For a qualified immunity analysis, therefore, the court must examine: 1) whether the officials violated a constitutional right and 2) whether that right was clearly established at the time. <u>Id.</u>

In the instant case, the only civil rights claim remaining against the Carbondale Defendants is that their entry into the plaintiffs' house violated their rights. As set forth above, it is too early at this juncture to determine whether the plaintiffs' rights were in fact violated. If it was, the law regarding entry into a house to make an arrest is clearly established, and qualified immunity would not apply in the instant case.

Thus, the motion for summary judgment based upon qualified immunity will be denied.

**F. State law tort claims**

The Carbondale Defendants next address plaintiffs' state law tort claims, intentional infliction of emotional distress, invasion of privacy and libel. We will address them separately.

**1. Intentional infliction of emotional distress**

The ninth cause of action in plaintiffs' complaint seeks recovery for intentional infliction of emotional distress. They assert that defendants

actions caused them to have nightmares, anxiety, depression, fearfulness and emotional distress. (Doc. 22, Amended Complaint ¶ 68).

The doctrine of intentional infliction of emotion distress provides that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). Additionally, under Pennsylvania law, in order to state a claim for infliction of emotional distress, the plaintiff must allege some physical injury caused by the defendant's conduct. Rolla v. Westmoreland Health Sys., 651 A.2d 160, 163 (Pa. Super. Ct. 1994) ( explaining that "it is clear that in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury.") In the instant case, the plaintiffs have not demonstrated, or alleged, any physical harm that was caused by the emotional distress that they seek to recover damages for. Summary judgment will thus be granted to the Carbondale Defendants on this claim.

### 2. Invasion of Privacy

Count X of the plaintiffs' complaint asserts a cause of action for invasion of privacy. Plaintiffs aver that they were woken from a sound sleep and were not properly dressed, thus they were unwontedly embarrassed by the defendants' actions. (Doc. 22, Amended Complaint ¶ 70).

The tort of invasion of privacy comes in the following four different varieties: 1) intrusion upon seclusion; 2) appropriation of name or likeness; 3) publicity given to private life; and 4) publicity placing a person in a false light. Santillo v. Reedel, 634 A.2d 264, 266 (Pa. Super. Ct. 1993). From

the allegations of plaintiffs' complaint, it is clear that they are proceeding on a theory of "intrusion upon seclusion."

A defendant is liable for this tort "when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs."  Harris v. Easton Pub. Co., 483 A.2d 1377, 1383  (Pa. Super. Ct. 1984) An action for intrusion upon seclusion may be based upon (1) a physical intrusion into a place where the plaintiff has secluded himself, (2) a use of the defendant's senses to oversee or overhear the plaintiff's private affairs, or (3) some other form of investigation or examination into plaintiff's private concerns.  Id.

A defendant is not liable for this tort "unless the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person."  Id.

The Carbondale Defendants assert that they relied upon a valid warrant when they entered the home and believed they had a legal justification for entering the house.  Therefore, they cannot be held liable for this tort.  We disagree.  As set forth in section IA, the defendants' entry into the house may be unconstitutional.  Such an invasion would be highly offensive to an ordinary reasonable person.  Thus, we cannot, at this point grant summary judgment to the defendants on the invasion of privacy claim.  If the entry is ultimately found to be constitutional, however, dismissal of the invasion of privacy claim would be appropriate.

### 3.  Libel

The final count of the amended complaint asserts a cause of action for libel.  Specifically, the count avers "Defendants caused false malicious statements to be published in the local newspaper that lowered plaintiff in

the eyes of the community, friends, neighbors, co-workers, business associates, clients and prospective clients." (Doc. 22, Amended Complaint, ¶ 74).  Plaintiff alleges that the incident was reported to the Carbondale News in a factually inaccurate way. (Id. at ¶ 50).  The Carbondale Defendants indicate that plaintiffs have conducted no discovery on this issue and thus have no facts to indicate that defendant reported anything to the news.  Therefore, they claim that summary judgment in their favor is appropriate.  We agree.

Summary judgment is appropriate if the moving party demonstrates that non-moving party has not established the requisite facts to establish an essential element of an issue for which it bears the burden of proof at trial.  Celotex, 477 U.S. at 322-23.

With regard to libel, the law provides that the plaintiff must establish that the defendant "published" a statement that would blacken a person's reputation in the community.  Baker v. Lafayett College, 532 A.2d 399, (Pa. 1987).  In the instant case, no facts have been presented to indicate that the defendants reported anything to the newspaper.  At his deposition, Plaintiff Benjamin Wayne Merring refused to provide the names of individuals who allegedly spoke to him regarding the newspaper article. (Doc. 30-4, Pl. Depo. at 55-57).  Accordingly, summary judgment will be granted to the defendants on plaintiffs' libel claim.

### G. Governmental Immunity

The next argument raised by the Carbondale Defendants is governmental immunity.  They claim that they are protected by governmental immunity with regard to the four state law tort claims found in final four counts of plaintiffs' complaint.  After a careful review, we

disagree.

Under the Political Subdivision Tort Claim Act, 42 PENN. CONS. STAT. ANN. § 8541 et seq, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof, or any other person." Employees of a local agency are liable only to the same extent as their local agency. Id. at § 8545. The Carbondale Defendants assert that eight exceptions to this governmental immunity exist and that none of them are applicable to the instant case. Therefore, they argue that they cannot be held liable for the torts alleged in the complaint.

We agree that eight exceptions exist, see 42 PENN. CONS. STAT. ANN. § 8542(b). But the law also provides an additional exception from immunity where the employees conduct constitutes, *inter alia*, wilful misconduct. 42 Penn. Cons. Stat. Ann. § 8550. The Third Circuit Court of Appeals has held that "wilful misconduct" in this context means the same as the term "intentional tort." Brown v. Muhlenburg Twp., 269 F.3d 205, 214 (3d Cir. 2001). Thus governmental immunity is inapplicable with regard to the four causes of actions for intentional torts found in the amended complaint, and the Carbondale Defendants' motion for summary judgment on this ground will be denied.

## II. The Constable Defendants

The second motion for summary judgment was filed jointly by Defendants Paul Caviston and Norman Lohrey (identified in the complaint as Defendant John Doe) . These are the two Pennsylvania Constables involved in the instant case (hereinafter referred to collectively as the "Constable Defendants"). The Constable Defendants also seek summary

judgment on all of the plaintiffs' claims. We shall address them *in seriatim.*

### A. Constitutional claims

The Constable Defendants seek summary judgment on plaintiffs' claim of violation of constitutional rights. Defendant Cavitson and Defendant Lohrey raise different arguments with regard to these claims and we will discuss them separately.

#### 1. Defendant Caviston

Defendant Caviston seeks summary judgment with regard to the claim of plaintiff's Fourth Amendment search and seizure claim on the basis that the undisputed evidence indicates that he never entered the plaintiffs' residence. After a careful review, we agree and summary judgment will be granted to Defendant Caviston.

Plaintiff alleges in his complaint that Defendant Caviston remained in the vehicle while the other defendants entered the house. (Doc. 22, Amended Complaint, ¶ ¶ 17-19). As Caviston did not enter the house, he is not liable for any alleged unreasonable search and seizure.[2] Summary Judgment will be granted to Defendant Caviston on the plaintiff's constitutional claims.

#### 2. Defendant Lohrey

Defendant Lohrey also moves for summary judgment on the plaintiff's constitutional claims. Defendant Lohrey argues that he relied upon a valid warrant to enter plaintiffs' residence to effectuate his arrest. As set forth above, however, for such entry to be reasonable, in addition to acting on a

---

[2]Plaintiffs argue that Defendant Caviston did nothing to stop the alleged violation of their rights. Plaintiffs have cited no authority for the position that Caviston had an affirmative duty to take any action with regard to the other officers. Therefore, we find this argument to be without merit.

15

valid warrant, defendant must have a reasonable belief that the arrestee is present within the residence when he enters. Defendant Lohrey has not presented evidence to establish this factor. Therefore, granting summary judgment is inappropriate at this juncture.[3]

### B. Qualified Immunity

The Constable Defendants also move for summary judgment based upon qualified immunity. As we have found that judgment should be granted to Defendant Caviston on the constitutional claims, the qualified immunity analysis is moot as to him. The qualified immunity argument will be denied with regard to Defendant Lohrey for the same reasons it was denied to the Carbondale Defendants as set forth *supra* in section IE.

### C. Conspiracy

The Constable Defendants next move for summary judgment on the conspiracy claim. For the reasons set forth above with regard to the Carbondale Defendants, summary judgment will be granted to the Constable Defendants on the plaintiffs' conspiracy claim. See, *supra* § ID.

### D. State law tort claims

The Constable Defendants lastly move for summary judgment on plaintiffs' state law tort claims. We will address each separately.

---

[3] Defendant asserts that this case is directly controlled by Cerva v. Fulmer, 596 F. Supp. 86 (E.D. Pa. 1984). It is important to note, however, that as a district court case, Cerva does not control this court. That being said, we do not disagree with the analysis found in Cerva. In that case, the arresting officers had telephoned the arrestees' sister at the place of the arrest shortly before going there, and had confirmed that he would be there. Id. at 90. Therefore, unlike Defendant Lohrey or the Carbondale Defendants, the defendants in that case had established a reasonable belief that the arrestee would be located at the premises they entered.

### 1. Intentional Infliction of Emotional Distress

For the reasons set forth above with regard to the Carbondale Defendants, we will grant summary judgment on the intentional infliction of emotional distress claim against the Constable Defendants.

### 2. Invasion of privacy

The Constable Defendants also move for summary judgment on the invasion of privacy claim. Because Defendant Caviston did not enter the plaintiffs' residence, we will grant judgment to him on the invasion of privacy claim. We will deny summary judgment on the invasion of privacy claim with respect to Defendant Lohrey for the reasons set forth above with regard to the Carbondale Defendants.

### 3. False Imprisonment

The Eleventh Count of plaintiff's complaint asserts a cause of action for false imprisonment. Plaintiffs assert that they were "confined to their home and were not free to leave at will." (Doc. 22, Amended Complaint, ¶ 72). The Constable Defendants seek summary judgment on this cause of action, and we shall grant their motion.

The elements of a false imprisonment claim are 1) the detention of another person, and 2) the unlawfulness of such detention. See Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa.1994).

In the instant case, the plaintiffs have not pled sufficient facts from which we could find a false imprisonment. Plaintiffs assert that the police set up a "swat-like" setting around the house. Nothing indicates, however, that the plaintiffs were not free to leave the premises if they chose. Especially, with regard to Plaintiff Ruhamah Clara Merring. Nothing indicates that the police had any interest in detaining her. In fact, they

discovered that the police had left when Plaintiff Ruhamah Clara Merring left the house to go to work.  To the extent that Plaintiff Benjamin Wayne Merring felt detained, we cannot find that such "detention" was unlawful.   It would be understandable for plaintiff to feel detained, knowing as he did that multiple warrants for his arrest existed and that the defendants were attempting to serve one of them.  Such a "detention," however, is not unlawful.  Summary judgment will be granted to the defendants on this claim.[4]

**Conclusion**

For the reasons set forth above, summary judgment will be granted in part and denied in part.  An appropriate order follows.

---

[4]The Carbondale Defendants moved for summary judgment on the false imprisonment claim, but did not brief the issue.  For the reasons set forth with regard to the Constable Defendants, summary judgment will also be granted to the Carbondale Defendants.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BENJAMIN WAYNE MERRING, PRO PER** and **RUHAMAH CLARA MERRING, his wife,** : Plaintiffs : : v. : : **THE CITY OF CARBONDALE, PENNSYLVANIA; JEFF TAYLOR,** individually and an his official capacity as Chief of Police, Carbondale Police Department; **BRIAN BOGNATZ,** individually and in his official capacity as Sergeant Carbondale Police Department; **DOMINICK ANDIDORA,** individually and in his official capacity as Officer of the Carbondale Police Department; **THE COMMONWEALTH OF PENNSYLVANIA; PAUL CAVISTON,** individually and in his official capacity as Constable, Commonwealth of Pennsylvania; and **NORMAN LOHREY,** individually and in his official capacity as Constable, Commonwealth of Pennsylvania, : Defendants | No. 3:06cv895 (Judge Munley) |

## **ORDER**

**AND NOW**, to wit, this 27th day of March 2008, the plaintiffs' motions for summary judgment (Doc. 28 and Doc. 30) are hereby **GRANTED** in part and **DENIED** in part as follows:

Summary judgment is **GRANTED** in total to the following defendants: The City of Carbondale Pennsylvania, Defendant Jeff Taylor and Defendant Paul Caviston.

Summary judgment is denied to Defendants Bognatz, Andidora and Lohrey with regard to qualified immunity, government immunity, invasion of

privacy and with respect to the Fourth Amendment unreasonable search and seizure claim.  Summary judgment is **GRANTED** to these defendants on all the remaining claims.

                                              **BY THE COURT:**

                                              **s/ James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**